F I L E D
United States Court of Appeals
Tenth Circuit

APR 19 1999

PATRICK FISHER
Clerk

PUBLISH

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

UNITED STATES OF AMERICA,

      Plaintiff - Appellee,

vs.

MANUEL DOZAL,

      Defendant - Appellant.

No. 98-3099

---

UNITED STATES OF AMERICA,

      Plaintiff - Appellee,

vs.

RUDY GONZALEZ,

      Defendant - Appellant.

No. 98-3103

---

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS
(D.C. Nos. 97-CR-10120-1, 97-CR-10120-02-MLB)

---

E. Jay Greeno, Greeno & Boohar, Wichita, KS, for Defendant-Appellant, Manuel Dozal.

Cyd Gilman, Assistant Federal Public Defender, Office of the Federal Public Defender, District of Kansas, Wichita, KS, for Defendant-Appellant, Rudy Gonzalez.

D. Blair Watson, Assistant United States Attorney (Jackie N. Williams, United States Attorney, with him on the briefs), U.S. Attorney's Office, Wichita, KS, for Plaintiff-Appellee.

---

Before **BRORBY**, **McWILLIAMS**, and **KELLY**, Circuit Judges.

---

**KELLY**, Circuit Judge.

---

Defendants-Appellants Manuel Dozal and Rudy Gonzalez[1] were charged with conspiring to distribute cocaine in violation of 21 U.S.C. § 846 (count 1); distribution of approximately twelve ounces of cocaine in violation of 21 U.S.C. § 841(a) and 18 U.S.C. § 2 (count 2); and possession with intent to distribute approximately thirty ounces of cocaine in violation of 21 U.S.C. §841(a) and 18 U.S.C. § 2 (count 3). The jury found Mr. Dozal and Mr. Gonzalez guilty of counts 1 and 3 and acquitted them of count 2. Both defendants received sentences of sixty-three months' imprisonment on each count, to run concurrently.

On appeal, Mr. Dozal contends that the trial court erred in (1) denying his motion to quash his arrest and suppress evidence seized from an apartment that he shared with Mr. Gonzalez; (2) allowing testimony regarding his refusal to consent to a search of property under his exclusive control in violation of Due Process;

---

[1] Mr. Gonzalez' case, No. 98-3103 was submitted on the briefs, see Fed. R. App. P. 34(a), whereas Mr. Dozal's case, No. 98-3099, was orally argued.

and (3) admitting evidence concerning his prior arrest for possession with intent to distribute marijuana under Fed. R. Evid. 404(b).

Mr. Gonzalez challenges (1) the trial court's denial of his motion to suppress evidence seized after an allegedly coercive search of the apartment; (2) its refusal to include requested "mere presence" language in its conspiracy instruction; and (3) the sufficiency of the evidence to convict him of counts 1 and 3.

Our jurisdiction arises under 28 U.S.C. § 1291, and we affirm.


Background

This case involves an alleged conspiracy to distribute cocaine by Mr. Dozal, Mr. Gonzalez and a third defendant – Mr. Dozal's brother, Robert Dozal-Rivera.[2] On August 28, 1997, a confidential informant and two county sheriffs, working undercover, met Mr. Dozal-Rivera in a trailer in Wichita, Kansas and arranged to purchase twelve one-ounce packages of cocaine. Mr. Dozal-Rivera also offered to sell the undercover officers an additional two to six ounces of cocaine. After being shown $12,000 in cash, Mr. Dozal-Rivera stated that he had to retrieve the drugs from another location.

---

[2]In this Opinion, we refer to Manuel Dozal as "Mr. Dozal" and Robert Dozal-Rivera as "Mr. Dozal-Rivera." Collectively, they are called "the Dozal brothers."

Officers established surveillance of a second residence – the address to which Mr. Dozal-Rivera's car was registered – after they lost contact with Mr. Dozal-Rivera. Detectives watching the second house observed Mr. Dozal-Rivera arrive with another person, whom Mr. Dozal-Rivera's girlfriend identified at trial as Mr. Gonzalez. According to the girlfriend's testimony, Mr. Dozal-Rivera and Mr. Gonzalez went into the unfinished basement of the house, where cocaine was later seized. Then they departed in a red Nissan. A detective who followed the Nissan testified that Mr. Gonzalez repeatedly looked over his shoulder, as if checking to see whether they were being followed.

Mr. Dozal-Rivera and Mr. Gonzalez drove to the trailer where the deal had been arranged, and Mr. Gonzalez waited in the car while Mr. Dozal-Rivera entered the trailer with a Nike shoe box containing cocaine. Inside the trailer, Mr. Dozal-Rivera showed twelve individual bags of cocaine to the officers and indicated that he could arrange for them to purchase as many as twenty-nine additional ounces. The officers arrested Mr. Dozal-Rivera and Mr. Gonzalez.

After being advised of his Fourth Amendment rights in Spanish, Mr. Gonzalez consented to a search of the apartment that he shared with Mr. Dozal. When officers arrived at the apartment and informed Mr. Dozal of Mr. Gonzalez' consent, Mr. Dozal barred the officers from the living room, which he exclusively controlled, but allowed them to search Mr. Gonzalez' bedroom, as well as

"common areas" like the bathroom and walk-in closet. Mr. Dozal specifically identified a wallet and cash in a trash can in the bedroom and another trash can in the living room as his property.

Mr. Dozal was arrested after two one-ounce packages of cocaine were discovered in a charcoal bag in the shared bathroom. A search of the walk-in closet yielded a scale, later determined to bear traces of cocaine. Several Nike shoe boxes similar to the one used to conceal illegal drugs were discovered in Mr. Gonzalez' bedroom. After obtaining a search warrant, officers found thirty packages of cocaine in the trash can in the living room. The bag concealing these packages bore Mr. Dozal-Rivera's fingerprint. The trash can in the bedroom contained $634 in cash, and additional packages of cocaine were discovered inside Mr. Dozal's stereo speakers and in a bathroom drawer.

The district court held a hearing outside the presence of the jury to determine whether prior drug-related activity by Mr. Dozal could be introduced under Rule 404(b). This evidence was found admissible. The court also denied Mr. Gonzalez' motion to suppress evidence obtained pursuant to his allegedly involuntary consent to search, Mr. Dozal's motion to quash his arrest and suppress evidence from the apartment, and Mr. Dozal's motion in limine concerning his refusal to consent to the search.

I.  No. 98-3099 (Mr. Dozal's Appeal)

A.    Denial of Motion to Quash Arrest and Suppress Evidence

Mr. Dozal contends that (1) the warrantless search of the premises prior to his arrest was undertaken without legal justification; (2) the officers arrested him without either a warrant or probable cause; and (3) a search warrant was unconstitutionally obtained on the basis of his denial of consent to search.

The record demonstrates that the officers limited their warrantless search of the apartment to Mr. Gonzalez' bedroom and the common areas.  See 4 R. at 195.  Mr. Dozal does not charge the officers with obtaining Mr. Gonzalez' consent coercively or with exceeding the scope of that consent.  A person who resides with the defendant and engages in mutual use of the property may authorize a warrantless search.  See United States v. Matlock, 415 U.S. 164, 172 n.7 (1974); United States v. Rith, 164 F.3d 1323, 1328 (10th Cir. 1999).  Because Mr. Dozal admits that Mr. Gonzalez lived in the apartment and at least shared control over all areas searched without a warrant, we find his first argument without merit.

In framing his second argument, Mr. Dozal correctly asserts that a warrantless arrest must be supported by probable cause.  See United States v. Vazquez-Pulido, 155 F.3d 1213, 1216 (10th Cir.), cert. denied, 119 S. Ct. 437 (1998).  We review the legal issue of probable cause de novo and the factual findings supporting the district court's determination for clear error.  See United

States v. Dodds, 946 F.2d 726, 727 (10th Cir. 1991). An officer has probable

cause to arrest if, under the totality of circumstances, he "learned of facts and

circumstances through reasonably trustworthy information that would lead a

reasonable person to believe that an offense has been or is being committed by the

person arrested." Vazquez-Pulido, 155 F.3d at 1216 (quoting United States v.

Guerrero-Hernandez, 95 F.3d 983, 986 (10th Cir. 1996)). Although probable

cause need not be based on facts sufficient for a finding of guilt, it requires "more

than mere suspicion." Id. (citing United States v. Hansen, 652 F.2d 1374, 1388

(10th Cir. 1981)). Association with persons suspected of criminal conduct or

nearness to the site of illegal activity does not alone suffice. See id.; see also

Hansen, 652 F.2d at 1390 (holding that merely traveling with drug dealers did not

create probable cause at time of defendant's arrest). Furthermore, "probable

cause is lacking when an officer arrests a person for refusing to consent to a

warrantless search or seizure." Gasho v. United States, 39 F.3d 1420, 1438-39

(9th Cir. 1994).

In the instant case, the totality of circumstances supported a finding of

probable cause to arrest Mr. Dozal. A consensual search of the shared bathroom

yielded two ounces of cocaine. See,e.g., 4 R. at 231. Moreover, an officer

monitoring surveillance equipment overheard Mr. Dozal-Rivera indicate by the

use of the words "we" and "us" that multiple persons played a role in the cocaine

transaction. See 1 R., doc. 66 at 4; Vazquez-Pulido, 155 F.3d at 1216 n.5 (finding of probable cause may be based, in whole or in part, on co-conspirator's hearsay statement). Finally, Mr. Dozal does not contend that he failed to comprehend the officers' request to search the apartment or that his will was overborne when he allowed them to look in the bathroom. Given these circumstances, we hold that the officers had probable cause to arrest Mr. Dozal.

With regard to evidence seized under the state search warrant, we must grant the magistrate's decision "'great deference' such that we ask only whether [he or she] had a 'substantial basis' for determining probable cause existed." Lawmaster v. Ward, 125 F.3d 1341, 1348 (10th Cir. 1997). State searches must conform to federal constitutional requirements, whether or not they are "federal in character." United States v. Millar, 543 F.2d 1280, 1283 (10th Cir. 1976). Here, the affidavit supporting the warrant specifically asserted that, during their warrantless search, the officers found only two ounces of cocaine, whereas Mr. Dozal-Rivera led them to believe that he had access to *at least* two more ounces. See 1 R., doc. 46, exh. A. Moreover, in the affiant's eleven years of experience, drug traffickers' homes often contain drug packaging supplies and large amounts of cash. See id. The affidavit thus established the probability that the officers would find more evidence of criminal conduct in the apartment, see Lawmaster, 125 F.3d at 1348, and the warrant listed with particularity the items ultimately

seized.

Although the affiant noted that Mr. Dozal would not let the officers search his part of the residence, nothing in either the affidavit or the warrant indicates that the warrant was based on such a denial. Hence, the trial court did not err in denying Mr. Dozal's motion to suppress this evidence.

B.      Admissibility of Testimony About Refusal to Consent to Search

Mr. Dozal also objects to the government's use of his refusal to allow officers to search property under his exclusive control "to show that [he] had an interest in not having these areas searched." Aplt. Br. at 10. In his view, admission of such testimony "erroneously allowed the jury to infer guilty knowledge based on the exercise of his constitutionally guaranteed rights." Id.

According to the government, Mr. Dozal failed to object to testimony he now contends allowed the impermissible inference that he knew areas under his exclusive control contained illegal drugs. We reject this characterization of the record. During Officer Crawford's testimony, defense counsel made several objections to evidence that Mr. Dozal limited the search. See 4 R. at 188, 234.

We nevertheless find the defendant's challenge without merit. Relying on Doyle v. Ohio, 426 U.S. 610 (1976), Mr. Dozal argues that using evidence of his assertion of Fourth Amendment and Fifth Amendment rights to show that he had

something to hide violates Due Process. See Aplt. Br. at 12. The Doyle Court held that a defendant may not be impeached with evidence of his silence at the time of his arrest and after his receipt of Miranda warnings. See Doyle, 426 U.S. at 619. To the extent that Mr. Dozal argues that he was penalized for invoking his Fifth Amendment privilege against self-incrimination, see Aplt. Br. at 12, we note that he was not in custody at the time he refused to consent to the search. See Michigan v. Summers, 452 U.S. 692, 702 (1981) (distinguishing custodial interrogation from Fourth Amendment detentions, which are "substantially less intrusive"); United States v. Ritchie, 35 F.3d 1477, 1485-86 (10th Cir. 1994) (holding that defendant was not in custody during search of his residence). Accordingly, his statements to the officers were not protected by Miranda safeguards. See Illinois v. Perkins, 496 U.S. 292, 297 (1990) (stating that Miranda prohibits coercion arising from custodial interrogation).

Mr. Dozal also attempts to extend the Doyle strictures to the Fourth Amendment context. We recognize that "[t]he failure to consent to a search cannot form any part of the basis for reasonable suspicion," United States v. Wood, 106 F.3d 942, 946 (10th Cir. 1997), and we note that asking a jury to draw adverse inferences from such a refusal may be impermissible if the testimony is not admitted as a fair response to a claim by the defendant or for some other proper purpose. See United States v. Thame, 846 F.2d 200, 207 (3d Cir. 1988);

- 10 -

see also United States v. McNatt, 931 F.2d 251, 258 (4th Cir. 1991) (defense that officer planted evidence in defendant's truck invited testimony about refusal to permit officer to search the truck "at the time most important to this issue").

In this case, however, a careful review of the trial transcript convinces us that the contested statements were introduced, not to impute guilty knowledge to Mr. Dozal, but for the proper purpose of establishing dominion and control over the premises where a large part of the cocaine was found. The trial court did not abuse its discretion in allowing this testimony under these circumstances.

C.    Rule 404(b) Evidence

Finally, Mr. Dozal challenges the admissibility of testimony by Oklahoma Highway Patrol Officer Michael Plunkett about Mr. Dozal's prior arrest for possession of marijuana. Officer Plunkett testified that on August 2, 1996, he conducted a routine traffic stop of a vehicle, driven by Mr. Dozal-Rivera, in which Mr. Dozal was a passenger. See 4 R. at 254-55. After a drug-sniffing dog detected the presence of contraband, Officer Plunkett found three bundles of marijuana concealed within the door on Mr. Dozal's side of the car and two bundles hidden in the same manner on Mr. Dozal-Rivera's side. See id. at 259. The trial court admitted this evidence under Fed. R. Evid. 404(b) to show Mr. Dozal's knowledge and intent to commit the charged drug crimes. See id. at 213-

- 11 -

We review evidentiary rulings under Rule 404(b) for abuse of discretion and ask whether the trial court satisfied four requirements:

> (1) evidence of other crimes, wrongs, or acts must be introduced for a proper purpose; (2) the evidence must be relevant; (3) the court must make a Rule 403 determination whether the probative value of the similar acts is substantially outweighed by its potential for unfair prejudice; and (4) the court, upon request, must instruct the jury that the evidence of similar acts is to be considered only for the limited purpose for which it was admitted.

United States v. Viefhaus, 168 F.3d 392, 397 (10th Cir. 1999) (citing Huddleston v. United States, 485 U.S. 681, 691-92 (1988)). The defendant's knowledge and intent are among the permissible purposes for introducing prior bad acts evidence. See United States v. Russell, 109 F.3d 1503, 1506-07 (10th Cir. 1997) (citing Fed. R. Evid. 404(b)).

However, without either a conviction or some evidence that Mr. Dozal was knowingly involved with the concealed drugs, his prior arrest does not constitute a "crime" or a "wrong." The fact that the officer found marijuana behind the door panels of a car in which Mr. Dozal was merely a passenger does not establish knowledge or intent. Although evidence of prior drug transactions may be introduced "to show intent to enter [a] drug conspiracy, knowledge of the conspiracy, motive to hide [the] drugs . . . , and absence of mistake or accident that the drugs were found in [the defendant's home]," id. at 1507, the government

did not demonstrate that Mr. Dozal engaged in a drug *transaction* in 1996 or even

that he knew the door panels contained contraband. Thus, the district court

should not have admitted testimony about the 1996 arrest.

Yet, given the discovery of more than thirty ounces of cocaine in areas of

the apartment that Mr. Dozal controlled, we hold that the record contained

"substantial evidence of [his] guilt" and the jury could have reached its verdict

without Officer Plunkett's testimony. See Viefhaus, 168 F.3d at 398 (citing

United States v. Oberle, 136 F.3d 1414, 1419 (10th Cir.), cert. denied, 119 S. Ct.

197 (1998)). Admitting evidence of the 1996 arrest constituted harmless error.

## II. No. 98-3103 (Mr. Gonzalez' Appeal)

### A. Denial of Motion to Suppress Evidence

Mr. Gonzalez challenges the admissibility of evidence seized from the

apartment he shared with Mr. Dozal on two grounds. First, he argues that he

would not have consented to a search of the apartment but for his allegedly

unlawful arrest. Second, he contends that his consent was involuntary.

Although we review the legal issue of probable cause de novo, see United

States v. Dodds, 946 F.2d 726, 727 (10th Cir. 1991), we will not disturb the

district court's findings unless we determine that, given the totality of

circumstances, the arresting officer lacked sufficiently reliable information to

form a reasonable belief that the defendant was committing or had committed a crime. See United States v. Vazquez-Pulido, 155 F.3d 1213, 1216 (10th Cir. 1998). Here, the district court's findings support the existence of probable cause to arrest Mr. Gonzalez. First, the district court found that the arresting officer, Detective Lathrop, was experienced and cautious. See 1 R., doc. 66 at 10. Second, prior to Mr. Gonzalez' arrest, Detective Lathrop overheard statements by Mr. Dozal-Rivera indicating that he had at least one partner in the cocaine transaction. See id. Third, because Detective Lathrop knew that Mr. Dozal-Rivera was making a sale in the trailer, and Mr. Gonzalez was sitting outside in the car, Detective Lathrop reasonably inferred that Mr. Gonzalez was posted as a lookout. See id. Fourth, Mr. Gonzalez joined Mr. Dozal-Rivera during the latter's self-described trip to get twelve ounces of cocaine, and such a meeting could be viewed as more than coincidental. See id. at 11. Finally, Detective Lathrop legitimately worried about the safety of children in the area, given the potential for violence inherent in illegal drug transactions. See id. Given these factual findings, the district court did not err in its determination that the detective had probable cause to arrest Mr. Gonzalez, and because the arrest was not improper, we do not consider the defendant's consent to be fruit of the poisonous tree under Wong Sun v. United States, 371 U.S. 471 (1963).

Next, Mr. Gonzalez contends that he did not voluntarily consent to a search

- 14 -

of the apartment.  Voluntariness is a question of fact to be determined by the totality of circumstances, see Schneckloth v. Bustamonte, 412 U.S. 218, 227 (1973); United States v. Glover, 104 F.3d 1570, 1583  (10th Cir. 1997), and "we cannot overturn the district court's findings of fact unless they are clearly erroneous."  United States v. Doyle, 129 F.3d 1372, 1377 (10th Cir. 1997).  Mr. Gonzalez argues that his consent arose from duress because he was "held in custody in an interrogation room without the opportunity to see an attorney, or loved ones" and "was not given his Miranda rights regarding his right to remain silent until after he had executed the consent to search form."  Aplt. Br. at 42-43.

However, Supreme Court and Tenth Circuit precedent establishes that "[c]onsent to search may be voluntary even though the consenting party is being detained at the time consent is given," Doyle, 129 F.3d at 1377 (citing United States v. Watson, 423 U.S. 411, 424 (1976)), and law enforcement agents fail to advise him of his Miranda rights.  See United States v. McCurdy, 40 F.3d 1111, 1118 (10th Cir. 1994).  The proper inquiry centers on whether the defendant suffered, inter alia, "physical mistreatment, use of violence or threats of violence, promises or inducements, deception or trickery."  Glover, 104 F.3d at 1584.

Here, the district court found "no evidence that [Mr.] Gonzalez was refused food, water or bathroom privileges," or that the officers detaining him employed trickery or threats.  1 R., doc. 66 at 13.  Moreover, his consent was obtained in

Spanish by a detective fluent in that language. See id. at 13-14; 6 R. at 142. Because the court did not clearly err in finding that Mr. Gonzalez voluntarily consented under the totality of circumstances, it properly denied his motion to suppress evidence seized during the warrantless search.

B.      Jury Instruction

Mr. Gonzalez also challenges the trial court's refusal to include language that he requested in the conspiracy instruction. The instruction that the court gave stated in relevant part:

> Mere similarity of conduct among various persons, and the fact they may have associated with each other, and may have assembled together and discussed common aims and interests, does not necessarily establish proof of the existence of a conspiracy.

1 R., doc. 89, no. 11. Mr. Gonzalez contends that declining to use the exact words "mere presence at the scene of an event, even with knowledge that a crime is being committed" prejudiced his case. Aplt. Br. at 31-32. We disagree.

We review the district court's decision to give a particular jury instruction for abuse of discretion and consider the instructions as a whole de novo to determine whether they accurately informed the jury of the governing law. See Gust v. Jones, 162 F.3d 587, 596 (10th Cir. 1998). Although we recognize that "[a] defendant is entitled to an instruction on his theory of the case if the instruction is a correct statement of the law and if he has offered sufficient

- 16 -

evidence for the jury to find in his favor," United States v. McIntosh, 124 F.3d 1330, 1337 (10th Cir. 1997), "[i]t is not error to refuse to give a requested instruction if the same subject matter is adequately covered in the general instructions." United States v. Alonso, 790 F.2d 1489, 1496 (10th Cir. 1986) (quoting United States v. Miller, 460 F.2d 582, 588 (10th Cir. 1992)).

Mr. Gonzalez makes much of the difference between the word "presence" (which involves existence in a place) and "association" (which implies some kind of relationship to another person). See Aplt. Br. at 34. Yet, no evidence suggests that his "presence" outside the trailer or at Mr. Dozal-Rivera's house was independent of his "association" with his co-defendants. Moreover, this case does not involve a single crime scene or event to which a jury could easily relate a mere presence instruction. See 7 R. at 386.

Given the discovery of cocaine, scales, and Nike boxes in areas of the apartment that Mr. Gonzalez controlled or shared, the trial court could have instructed the jury on the elements of conspiracy without including mere presence or mere association language. See United States v. Negrete-Gonzales, 966 F.2d 1277, 1282 (9th Cir. 1992) (mere presence instruction unnecessary unless government's case rests primarily on defendant's presence at crime scene); see also United States v. DeMasi, 40 F.3d 1306, 1315 (1st Cir. 1994) ("[A] defendant's mere presence argument will fail in situations where the mere is

lacking.") (internal quotation marks and citation omitted). Instead, the court gave an instruction that encompassed Mr. Gonzalez' theory that he did not belong to the conspiracy. The trial judge did not abuse his discretion in refusing to use the precise language that Mr. Gonzalez requested. See Alonso, 790 F.2d at 1496; United States v. Hester, 140 F.3d 753, 757-58 (8th Cir. 1998). The jury instructions, taken as a whole, properly guided the jury. See Gust, 162 F.3d at 596.

C.    Sufficiency of the Evidence

Mr. Gonzalez' final claim questions the sufficiency of the evidence supporting his conviction on the conspiracy and possession counts. We review the record de novo to determine whether, "after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime[s] beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 319 (1979); United States v. Vaziri, 164 F.3d 556, 565 (10th Cir. 1999).

A conviction for possession of cocaine with intent to distribute under 21 U.S.C. § 841(a) and 18 U.S.C. § 2 requires proof that the defendant "(1) possessed a controlled substance; (2) knew he possessed a controlled substance; and (3) intended to distribute the controlled substance." United States v. Wilson,

107 F.3d 774, 778 (10th Cir. 1997). Possession is constructive, rather than actual, when the defendant "knowingly has ownership, dominion or control over the narcotics and the premises where the narcotics are found." Id. (quoting United States v. Hager, 969 F.2d 883, 888 (10th Cir. 1992)). Constructive possession satisfies the first element of the crime. See id.

Most of the evidence against Mr. Gonzalez was circumstantial; yet, a rational jury could conclude that he had mutual control over the small bathroom where cocaine was found and that he knowingly possessed the drugs. A rational jury could also find – based on the large quantity of cocaine in the apartment and the scales in the closet – that the cocaine was intended for distribution, rather than personal use. We hold that the evidence supported Mr. Gonzalez' conviction on the possession with intent to distribute count.

A conspiracy in violation of 21 U.S.C. § 846 consists of four elements. See United States v. Bell, 154 F.3d 1205, 1208 (10th Cir. 1998). The government must prove beyond a reasonable doubt "(1) an agreement with another person to violate the law, (2) knowledge of the essential objectives of the conspiracy, (3) knowing and voluntary involvement, and (4) interdependence among the alleged conspirators." Id. (quoting United States v. Carter, 130 F.3d 1432, 1439 (10th Cir. 1997)). The jury may infer an agreement from circumstantial evidence that indicates concerted action in furtherance of a common purpose. See id. It may

also infer guilty knowledge from the surrounding circumstances and presume that a defendant acting in furtherance of a conspiracy is a knowing participant therein. See id. (citing Carter, 130 F.3d at 1440).

Here, Mr. Gonzalez rode in a car with Mr. Dozal-Rivera on the way to make a drug sale. He repeatedly looked over his shoulder as if he were scanning for a "tail" and waited in the vehicle while Mr. Dozal-Rivera consummated the transaction. His room contained shoe boxes like the one concealing cocaine, and shared areas of the apartment where he lived were used to hide cocaine, large amounts of cash, and scales bearing cocaine residue. Given this strong circumstantial evidence, the jury could have reasonably inferred that (1) Mr. Gonzalez and the Dozal brothers agreed to distribute the illegal drugs; (2) Mr. Gonzalez had knowledge of the essential objectives of the conspiracy; (3) he knowingly and voluntarily participated in it; and (4) the co-defendants' activities constituted integral steps toward the possession and distribution of cocaine.

AFFIRMED.