**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**JUL 24 2000**

**PATRICK FISHER**
**Clerk**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

UNITED STATES OF AMERICA,

    Plaintiff-Appellee,

v.

AARON EUGENE CREECH,

    Defendant-Appellant.

No. 99-3205

(D.C. No. 98-CR-40086)
(D. Kan.)

**ORDER AND JUDGMENT**[*]

Before **BALDOCK**, **McWILLIAMS**, and **MURPHY**, Circuit Judges.[**]

A grand jury indicted Defendant Aaron Eugene Creech for possession of an unregistered sawed-off shotgun in violation of 26 U.S.C. § 5861(d). Defendant filed a motion to suppress evidence seized during a search of his apartment and a motion to suppress statements made during the search. In a thorough written order, the district court denied both motions. Thereafter, Defendant conditionally pled guilty to the

---

[*] This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. The court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

[**] After examining the briefs and appellate record, this panel has determined unanimously to honor the parties' request for a decision on the briefs without oral argument. See Fed. R. App. P. 34(f); 10th Cir. R. 34.1(A)(2). The case is therefore ordered submitted without oral argument.

indictment, reserving the right to appeal the court's denial of his motions to suppress. See Fed. R. Crim. P. 11(a)(2). The district court sentenced Defendant to eighteen months imprisonment and Defendant appealed. Our jurisdiction arises under 28 U.S.C. § 1291.

In reviewing the denial of a motion to suppress, we view the evidence produced at the suppression hearing in a light most favorable to the Government. United States v. Yazzie, 188 F.3d 1178, 1193 (10th Cir. 1999) (post-arrest statements); United States v. Patten, 183 F.3d 1190, 1193 (10th Cir. 1999) (physical evidence). We accept the district court's factual findings unless they are clearly erroneous, but review the court's legal conclusions de novo. Yazzie, 188 F.3d at 1193; Patten, 183 F.3d at 1193. Applying these standards, we affirm.

I.

The record amply supports the relevant historical facts as found by the district court in its order. United States v. Creech, No. 98-40086-01-SAC, unpub. order at 7-10 (D. Kan. Dec. 31, 1998) (hereinafter "order"). On the afternoon of August 3, 1998, three Topeka, Kansas law enforcement officers, accompanied by a United States deputy marshal with the fugitive task force, arrested Defendant outside his apartment on North Logan Street in Topeka, Kansas. Defendant was wanted on suspicion of aggravated burglary and sexual assault unrelated to the present charge. Upon his arrest, Defendant agreed to return to his apartment with the officers. Before entering the apartment and before advising Defendant of his Miranda rights, see Miranda v. Arizona, 384 U.S. 436,

469-73 (1966), Detective Robinson of the Topeka Police Department asked Defendant if the officers could search his apartment. Defendant asked whether the officers would obtain a search warrant if he did not consent to a search. The officers responded that they would attempt to get a search warrant if Defendant refused to consent. Defendant agreed to the search.

Inside the apartment, Defendant sat on the living room couch without handcuffs or other physical restraint and smoked a cigarette. Detective Robinson informed Defendant that he did not have to speak with the officers, but again did not advise Defendant of his Miranda rights. Detective Robinson then asked Defendant if he had any weapons in his apartment. Defendant responded that he had a shotgun in the closet. When the officers looked in the living room closet, Defendant responded that the gun was in his bedroom closet. Officer Obregon, also of the Topeka Police Department, watched Defendant while the other officers proceeded into the bedroom. During this time, Defendant stated without provocation that he "had gotten a deal" on the shotgun and that it "could cut a man in half." The officers located the shotgun in Defendant's bedroom closet.

Once the officers had seized and secured the shotgun, Detective Robinson advised Defendant of his Miranda rights. At that point, Defendant indicated he "would possibly" like to speak to his father or an attorney. Detective Robinson immediately stopped speaking with Defendant and stepped away. The officers informed Defendant

3

that he could make a phone call at police headquarters.  Again without provocation, Defendant indicated he wished to cooperate and would speak further with the officers. After reminding Defendant of his Miranda rights, Deputy Marshal Weber asked Defendant if he owned the shotgun.  Defendant responded "yeah."  The indictment followed.

## II.

Defendant first argues that because the officers coerced his consent to search his apartment, the search was unreasonable.  See U.S. Const. amend. IV.  According to Defendant, "the representation by the officers that they would attempt to obtain a search warrant if Mr. Creech refused to consent to the search was misleading and deceitful." The district court concluded that Defendant's consent to search was voluntary.  The court noted the mere fact that the officers had informed Defendant they would attempt to obtain a search warrant if he did not consent did not render his consent involuntary. Moreover, the court reasoned that nothing in the record suggested the officers had deceived or lied to Defendant about their intentions to seek a search warrant. We agree with the district court.

A search conducted pursuant to a consent is an exception to the Fourth Amendment's warrant requirement.  Schneckloth v. Bustamonte, 412 U.S. 218, 219 (1973).  In relying on this exception to sustain a search, the Government must prove by a preponderance of the evidence that consent was freely and voluntarily given.  United

4

States v. Soto, 988 F.2d 1548, 1557 (10th Cir. 1993). To determine whether a consent to search was freely and voluntarily given, we assess the totality of the circumstances. Schneckloth, 412 U.S. at 226-27. The Constitution requires only "that a consent not be coerced, by explicit or implicit means, by implied threat or covert force." Id. at 228. As we recently explained in United States v. Dozal, 173 F.3d 787, 796 (10th Cir. 1999): "The proper inquiry centers on whether the defendant suffered, inter alia, 'physical mistreatment, use of violence or threats of violence, promises or inducements, deception or trickery.'" (quoting United States v. Glover, 104 F.3d 1570, 1584 (10th Cir. 1997)).

Notably for our purposes, an officer's failure to warn a suspect of the right to refuse does not alone establish that a consent to search was involuntary. Schneckloth, 412 U.S. at 249 ("[W]hile the subject's knowledge of a right to refuse is a factor to be taken into account, the prosecution is not required to demonstrate such knowledge as a prerequisite to establishing a voluntary consent."). Similarly, where some basis exists to support an application for a search warrant, an officer's expressed intention to seek a search warrant in the absence of consent does not render a consent involuntary. See, e.g., United States v. Tompkins, 130 F.3d 117, 122 (5th Cir. 1997) (officer's statement that "he would obtain" a search warrant if defendant refused to consent was but one factor to be considered among the totality of the circumstances); United States v. White, 979 F.2d 539, 542 (7th Cir. 1992) (where officer's expressed intention to obtain a search warrant was genuine and not merely a pretext to induce submission, such intention did not vitiate

5

consent); see generally United States v. Salvo, 133 F.3d 943, 954 (6th Cir. 1998) (listing cases). Finally, a consent to search may be voluntary even though the suspect is detained at the time of the consent and law enforcement officers have failed to advise him of his Miranda rights. Dozal, 173 F.3d at 796. This is so because "[c]onsenting to a search is not evidence of a testimonial or communicative nature which would require officers to first present a Miranda warning." United States v. Rodriguez-Garcia, 983 F.2d 1563, 1568 (10th Cir. 1993).

The record viewed in a light most favorable to the Government belies Defendant's claim that the officers engaged in trickery or deceit to obtain his consent to search his apartment. Rather, the record amply supports the district court's conclusion that Defendant's consent "was unequivocal, specific, and freely given, and his consent was given without duress or coercion, express or implied." Order at 13. Defendant plainly understood he had a right not to consent: He asked the officers whether they would obtain a warrant if he refused. The officers' response that they would seek a search warrant for Defendant's apartment if he refused to consent was certainly justifiable in light of the evidence they had already gathered against him. Defendant was wanted on both county and municipal warrants at the time of his arrest. During the burglary and assault for which Defendant was wanted, certain items were stolen from the victim's home. The officers had a list of the stolen items and the victim had positively identified Defendant as one of the assailants. The record fails to support Defendant's claim that the

6

officers' expressed intentions to obtain a warrant were baseless or simply a pretext to obtain Defendant's consent. We find no error in the district court's conclusion that Defendant's consent to search was voluntary.

## III.

Defendant also argues the officers violated his right against self-incrimination and to counsel, see U.S. Const. amend. V & VI, when they (1) failed to advise Defendant of his Miranda rights before asking him about the presence of weapons in the apartment, and (2) questioned him about his ownership of the shotgun after he indicated he might like to speak with an attorney. The district court concluded that the pre-Miranda question to Defendant regarding the presence of weapons in the apartment was permissible under the "public safety exception" to Miranda. See New York v. Quarles, 467 U.S. 649 (1984). The court concluded that the post-Miranda question to Defendant regarding his ownership of the shotgun was permissible because his request for counsel was ambiguous. See Davis v. United States, 512 U.S. 452 (1994). We again agree with the district court.

## A.

In Quarles, 467 U.S. at 656, the Supreme Court held that police officers do not need to recite Miranda warnings prior to asking a suspect questions "reasonably prompted" by a concern for the public's or their personal safety. In so holding, the Court emphasized the distinction between (1) questions necessary to secure the safety

of police officers and the public, and (2) questions designed to elicit testimonial evidence from a suspect. Id. at 658-59; see also United States v. Padilla, 819 F.2d 952, 960-61 (10th Cir. 1987).

Detective Robinson's question regarding the presence of weapons in Defendant's apartment falls within the former category. As the district court noted, Defendant was not handcuffed at the time Detective Robinson asked him if any weapons were in the apartment. Detective Robinson made inquiry only a few minutes after Defendant and the officers returned to his apartment. Neither the couch on which Defendant was sitting unrestrained, nor any other location in his apartment, had been searched for weapons at that time. Detective Robinson asked only the question necessary to locate any weapons before advising Defendant of his Miranda rights. See Quarles, 467 U.S. at 659. The shotgun was not among the items listed as stolen during the burglary and assault, and the officers were not specifically searching for the shotgun to make a case against Defendant. Detective Robinson continued to speak with Defendant only after the shotgun had been secured and he had properly advised Defendant of his rights. Under these circumstances, the district court properly concluded that Detective Robinson's inquiry was "reasonably prompted" by a concern for the officers' safety.[1]

---

[1] The district court also properly noted that certain statements which Defendant made during the search were "spontaneous, unsolicited, and were not the product of any interrogation." Order at 23. First, when the officers began to look in the living room closet for the shotgun, Defendant told them the shotgun was in the bedroom closet.

(continued...)

8

B.

Similarly, the district court properly concluded that Deputy Marshal Weber did not violate Defendant's right against self-incrimination or to counsel when he asked if Defendant owned the shotgun. If a suspect requests an attorney at any time during a custodial interrogation, law enforcement officer must immediately cease questioning the suspect until a lawyer has been made available or the suspect reinitiates conversation. Edwards v. Arizona, 451 U.S. 477, 484-85 (1981). But if a suspect makes a reference to an attorney that is ambiguous or equivocal in that a reasonable officer in light of the circumstances would have understood only that the suspect might be invoking the right to counsel, questioning need not cease. Davis, 512 U.S. at 459.

In this case, Defendant's request to speak with an attorney was not only equivocal, he also reinitiated his conversation with the officers after they ceased questioning him. After Detective Robinson read Defendant's Miranda rights, Defendant indicated he "would like to talk possibly with an attorney." Rec. vol. II at 36. When Detective Robinson backed off, Defendant stated: "No, it's fine I'm going to

[1](...continued)
Opening the door to the closet nearest the couch was not an action which the officers should have known was likely to elicit an incriminating response from Defendant. Second, without any prompting, Defendant indicated to Officer Obregon that he had "gotten a deal" on the shotgun and it could "cut a man in half." Because Detective Robinson's initial question to Defendant regarding the presence of weapons in the apartment was proper, these subsequent unsolicited statements were undoubtedly admissible against Defendant.

9

talk to you, I don't have any problem with it." Id. at 24-25. Deputy Marshall Weber then reminded Defendant of his Miranda rights before asking Defendant if he owned the shotgun. Under these circumstances, Defendant has not demonstrated any constitutional violation.

AFFIRMED.

Entered for the Court,


Bobby R. Baldock
Circuit Judge