**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Walter B. SANDS, Defendant–
Appellant.**

**No. 08–3270.**

United States Court of Appeals,
Tenth Circuit.

May 11, 2009.

Terra D. Morehead, Office of United States Attorney, Kansas City, KS, for Plaintiff–Appellee.

Thomas J. Bath, Jr., Esq., Bath & Edmonds, P.A., Overland Park, KS, for Defendant–Appellant.

Before TACHA, TYMKOVICH, and GORSUCH, Circuit Judges:

## ORDER AND JUDGMENT*

NEIL M. GORSUCH, Circuit Judge.

A jury found Walter Sands guilty of (1) conspiracy to possess with intent to dis-

---

* After examining appellant's brief and the appellate record, this panel has determined unanimously that oral argument would not materially assist the determination of this appeal. *See* Fed. R.App. P. 34(a)(2) and 10th Cir. R. 34.1(G). The case is therefore ordered submitted without oral argument. This order and judgment is not binding precedent except under the doctrines of law of the case, res judicata and collateral estoppel. It may be

tribute at least 50 grams of methamphetamine; (2) possession with intent to distribute or distribution of at least 5 grams of methamphetamine; (3) possession with the intent to distribute at least 50 grams of methamphetamine; (4) use of a firearm in furtherance of a drug trafficking crime; and (5) being a felon in possession of a firearm. Before us, Mr. Sands's attorney has filed a brief pursuant to *Anders v. California*, 386 U.S. 738, 87 S.Ct. 1396, 18 L.Ed.2d 493 (1967), advising us that he discerns no colorable basis for appeal and seeking leave to withdraw. Mr. Sands has also filed a letter. After considering both, we find ourselves constrained to grant the motion to withdraw and dismiss the appeal.

\* \* \*

In 2005, the Drug Enforcement Administration ("DEA"), in conjunction with the local Police Department, launched an investigation into methamphetamine trafficking in Kansas City, Kansas. A number of confidential sources were used to make controlled purchases of methamphetamine from targeted individuals. One of these confidential sources informed the DEA that an individual by the name of Omar Rosales was in the business of distributing methamphetamine. Based on this tip, the DEA arranged for controlled buys to take place between the confidential source and Mr. Rosales.

The first such buy occurred on November 14, 2005, when the source purchased one ounce of methamphetamine from Mr. Rosales at the home of an individual named Tina Smith (who, Mr. Rosales said, had sold him the drugs in the first place). The next controlled buy took place a little over two weeks later. Agents followed the source to Mr. Rosales's house, at which

point the source and Mr. Rosales drove off together in the source's car. Agents saw that the car followed a dark-colored SUV registered to Mr. Sands. Agents followed the two vehicles to Mr. Sands's residence, at which point Mr. Rosales accompanied Mr. Sands into the residence. A short time later, Mr. Rosales exited the home and sold the source 24.5 grams of methamphetamine that he claimed to have purchased from Mr. Sands. Mr. Rosales also informed the source that he would be able to sell the source another ounce of better quality methamphetamine the following day because Mr. Sands was getting a new shipment.

In light of this development, government agents undertook surveillance of Mr. Sands's residence the following day. In due course, they saw Mr. Sands leave the residence and enter the same dark-colored SUV the agents had followed the day before. Officers observed that the SUV was operating with a tag violation and decided to initiate a traffic stop. During the stop, they learned that Mr. Sands was driving on a suspended license and had an active warrant for his arrest. Officers arrested Mr. Sands and found a blue digital scale with white residue and $687 on his person. During an inventory search of the vehicle, a loaded firearm was located under the driver's seat. Before the vehicle could be towed, Mr. Sands's girlfriend, Katie Shelton, reported to the scene and was allowed to take possession of the vehicle.

Mr. Sands was transported to the Kansas City, Kansas Police Department, where he was given his *Miranda* warnings and agreed to speak with officers. He discussed his history and contacts in the drug trade, including the fact that he se-

cited, however, for its persuasive value consistent with Fed. R.App. P. 32.1 and 10th Cir. R. 32.1.

cured methamphetamine from "Nino" and "Prieto" during the Fall of 2005. He stated that he had obtained approximately one to two ounces of methamphetamine from Prieto every two to three weeks, but on occasion had obtained larger quantities of up to a pound. From Nino, Mr. Sands stated that he had obtained four to eight ounces approximately every other day, but that, on occasion, he had obtained quantities of as much as one pound. Both Prieto and Nino, Mr. Sands admitted, would "front" him methamphetamine—that is, they would not collect money from him at the time they gave him the drugs, but would take their payments from the proceeds of Mr. Sands's subsequent sales.

Mr. Sands also described the presence of several ounces of methamphetamine in a coffee can outside his residence. In an effort to recover the drugs, agents eventually located Ms. Shelton, Mr. Sands's girlfriend. The agents called Mr. Sands in jail and handed the phone to Ms. Shelton. Mr. Sands informed her that the drugs were actually located in the console of his dark-colored SUV, which was parked at his residence. Ms. Shelton passed this information on to the agents, and then handed the phone to Deputy Jesse Valdez. Deputy Valdez obtained Mr. Sands's verbal consent to search the vehicle. Ms. Shelton then gave the agents the keys to the vehicle, and they quickly discovered 297.3 grams of methamphetamine in the SUV.

In the end, Mr. Sands was charged with five drug-related offenses. After his motion to suppress evidence recovered during the two searches of his SUV was denied, the case proceeded to trial. There, the jury convicted Mr. Sands on all counts. Prior to sentencing, Mr. Sands was granted leave to change counsel. Mr. Sands's new counsel filed a motion for judgment of acquittal or in the alternative new trial, which the district court denied. The new counsel also supplemented former counsel's sentencing memorandum with additional objections to the Presentencing Report. In the end, however, the district court overruled Mr. Sands's objections and sentenced him to 420 months' imprisonment.

\* \* \*

On appeal, Mr. Sands's counsel filed an *Anders* brief and moved to withdraw as counsel. *Anders* authorizes counsel to seek permission to withdraw from an appeal if, "after a conscientious examination," counsel finds the appeal "wholly frivolous." 386 U.S. at 744, 87 S.Ct. 1396. Invoking *Anders* requires the lawyer to "submit a brief to the client and the appellate court indicating any potential appealable issues based on the record." *United States v. Calderon*, 428 F.3d 928, 930 (10th Cir.2005) (citing *Anders*, 386 U.S. at 744, 87 S.Ct. 1396). The client as well may submit his or her own arguments for the court's consideration. *Id.* We must then "conduct a full examination of the record to determine whether the defendant's claims are wholly frivolous." *Id.* If they are, we may grant counsel's motion to withdraw and dismiss the appeal. *Id.* However, if we "find[ ] any of the legal points arguable on their merits (and therefore not frivolous)," we must permit the appeal. *Anders*, 386 U.S. at 744, 87 S.Ct. 1396.

In his *Anders* brief before us, Mr. Sands's counsel submits that this appeal would be conceivably meritorious only if (1) the district court erred in denying Mr. Sands's motion to suppress evidence seized during the two searches of the SUV; (2) Mr. Sands had ineffective assistance of trial counsel; (3) the district court erred in denying Mr. Sands's post-trial motion; or (4) the district court erred in overruling Mr. Sands's sentencing objections and denying his request for a downward variance.

For his part, Mr. Sands has submitted a letter expressing his general dissatisfaction with appellate counsel but identifying no additional arguments or issues for our consideration. In the end, we agree with counsel's conclusion that no basis in law or fact exists for an appeal in this case. We consider each argument in turn.

1. In reviewing a district court's denial of a motion to suppress, we assess *de novo* the legal question whether the search at issue was "reasonable" under the Fourth Amendment, although we view the evidence in the light most favorable to the district court's ruling and accept its factual findings unless clearly erroneous. *United States v. Cortez–Galaviz*, 495 F.3d 1203, 1205 (10th Cir.2007). After examining the record, we see no colorable basis to suggest that the two searches of Mr. Sands's vehicle were unconstitutional.

■ Mr. Sands argues that the first search of his SUV was invalid because the officers' asserted reasons for conducting the initial traffic stop that led to the search were pretextual. In mounting this challenge, he does not contest that, if the initial stop was valid, the subsequent arrest and inventory search was also lawful.[1] Mr. Sands's pretext argument, however, necessarily fails under well-established precedent because we review the validity of a traffic stop for its objective legitimacy, not in light of the officers' subjective motivations. *United States v. Winder*, 557 F.3d 1129, 1135 (10th Cir.2009). Here, the traffic stop was initiated after officers ob-

served Mr. Sands's SUV operating, all agree, with a tag violation. "[T]he subjective motivation of the trooper is not pertinent given the observed violation," *United States v. Gregoire*, 425 F.3d 872, 878 (10th Cir.2005), and the traffic stop was indubitably valid as an objective matter.

■ Mr. Sands next questions the second search of his vehicle on the basis that his consent was not given voluntarily. "Voluntariness is a question of fact to be determined by the totality of circumstances." *United States v. Dozal*, 173 F.3d 787, 795 (10th Cir.1999). Mr. Sands protested in his suppression motion before the district court that (1) he provided no written consent to the search; (2) he was never told he could refuse consent; and (3) he was incarcerated when the consent was allegedly given. The district court rejected each argument, finding that the law did not require any of the three conditions to guarantee the voluntariness of Mr. Sands's consent. The district court then proceeded to note that whether consent was lawfully obtained in this case depended on a credibility contest between Mr. Sands and Deputy Valdez about the content of their phone conversation. The court decided to credit Deputy Valdez, in part because his account was corroborated by another officer.

We discern no reasonable basis on which to question this ruling. This court has never required a writing for a consent to search to be valid, *see, e.g., United States v. Ringold*, 335 F.3d 1168, 1174–75 (10th

---

1. Had the search of Mr. Sands's vehicle been a search incident to arrest, as opposed to an inventory search, we might have a different case. *See Arizona v. Gant,* —— U.S. ——, 129 S.Ct. 1710, 173 L.Ed.2d 485 (2009). But, though the search is characterized in some places in the record as incident to arrest, the officer who conducted the search testified that it was an inventory search, and it is undisputed that the vehicle was being pre-

pared for towing before Mr. Sands's girlfriend arrived to take possession of it. Given this, it is unsurprising that the PSR characterized the search as an inventory search and that the defendant has not disputed this characterization before us. The record before us satisfies us the search was indeed an inventory search. Neither does Mr. Sands dispute that it was proper for officers to undertake that inventory search when they did.

Cir.2003), and we have previously held that "[c]onsent to search may be voluntary even though the consenting party is being detained at the time consent is given," *Dozal*, 173 F.3d at 796 (alteration in original), and even though the consenting party was not advised he could refuse consent, *United States v. Fernandez*, 18 F.3d 874, 882 (10th Cir.1994) (noting, however, that not informing the defendant in this manner can be a factor "particularly worth noting" in the voluntariness inquiry). In addition, we see nothing in the record to suggest that the district court's credibility determinations with respect to Mr. Sands and Deputy Valdez were clearly erroneous. *See United States v. Cavely*, 318 F.3d 987, 992 (10th Cir.2003) (credibility determinations reviewed under clearly erroneous standard).

■ 2. Any ineffective assistance of counsel claim at this juncture in the case would be likewise fruitless. "Such claims brought on direct appeal are presumptively dismissible, and virtually all will be dismissed" in favor of collateral proceedings. *United States v. Galloway*, 56 F.3d 1239, 1240 (10th Cir.1995). Mr. Sands offers no reason for an exception to our general rule in this case, and neither can we imagine one.

3. Mr. Sands mounts three arguments either for a judgment of acquittal or for a new trial on count 1, which charged that he "unlawfully, knowingly and intentionally combined, conspired, confederated and agreed with Omar Rosales and other persons known and unknown, ... to possess with intent to distribute and to distribute 50 grams or more of a mixture and substance containing a detectable amount of methamphetamine." Jury Inst. No. 17; *see also* Superseding Indictment. We address each argument in turn, keeping in mind our applicable standards of review. We review the denial of motions for judgment of acquittal *de novo*, but undertake this review while "viewing the evidence in the light most favorable to the government in determining if there is substantial evidence from which a jury could find the defendant guilty beyond a reasonable doubt." *United States v. Austin*, 231 F.3d 1278, 1283 (10th Cir.2000). The upshot of all this is that reversal is only warranted "if no rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Id.* The denial of a motion for new trial is reviewed under an abuse of discretion standard. *Id.* at 1281.

■ a. Mr. Sands first argues that insufficient evidence exists to support his conviction on count 1. To prove the charged conspiracy, the government had to prove that "(1) two or more persons agreed to violate the law; (2) the defendant knew the essential objectives of the conspiracy; (3) the defendant knowingly and voluntarily participated in the conspiracy; and (4) the alleged coconspirators were interdependent." *United States v. Yehling*, 456 F.3d 1236, 1240 (10th Cir. 2006); *see also* Jury Inst. No. 23. Here, Mr. Sands challenges only the government's proof on the fourth prong.

We see no meritorious basis for asserting that insufficient evidence exists in the record to support a jury finding of interdependence. "Interdependence requires that a defendant's actions facilitate the endeavors of other alleged coconspirators or facilitate the venture as a whole." *United States v. Carnagie*, 533 F.3d 1231, 1238 (10th Cir.2008) (internal quotations omitted). Each coconspirator must "depend[ ] on the successful operation of each 'link' in the chain to achieve the common goal." *Yehling*, 456 F.3d at 1241 (quoting *United States v. Dickey*, 736 F.2d 571, 582 (10th Cir.1984)).

In this case, the jury was instructed that, to find interdependence, it had to find that "the members [of a conspiracy], in some way or manner, intended to act together for their shared mutual benefit within the scope of the conspiracy charged—defendant's actions must facilitate the endeavors of other alleged coconspirators or facilitate the venture as a whole." Jury Inst. No. 23. During the course of trial, the jury heard ample evidence from which it could make this finding. Among other things, the jury heard testimony that Mr. Sands admitted to purchasing up to one pound of methamphetamine at a time from both Nino and Prieto (for a price of approximately $10,000), in addition to purchasing smaller quantities from them on a daily or weekly basis. The jury also heard that Prieto and Nino would "front" Mr. Sands methamphetamine on a regular basis. A reasonable jury could conclude from all this that Mr. Sands bought significant quantities of drugs not for personal consumption but to resell them for profit, a cut of which he would then subsequently return to Prieto and Nino. Indeed, we have previously held that "[t]his kind of fronting arrangement strongly suggests that [defendant] was expected to redistribute the fronted drugs for profit." United States v. Small, 423 F.3d 1164, 1184 (10th Cir.2005). The jury also learned that Mr. Rosales purchased up to one ounce of methamphetamine from Mr. Sands on a number of occasions, and had in turn sold drugs to the confidential source. And, as the jury further heard, Mr. Rosales had discussed future dealings with the confidential source, assuring the source that he could obtain even more and better quality drugs from Mr. Sands in the future.

From all this evidence, a reasonable jury could conclude that Mr. Sands, Mr. Rosales, and "other persons known and unknown," such as Prieto and Nino, were interdependent. We have held that "evidence establishing that a defendant purchased drugs on multiple occasions and for the purpose of resale, as opposed to one-time purchase for personal use, is an indication that the defendant was aware of and shared common goals with the larger conspiracy." Id. at 1183. This is because where "large quantities of narcotics are being distributed, each major buyer may be presumed to know that he is part of a wide-ranging venture, the success of which depends on performance by others whose identity he may not even know." Id. Here, the evidence is sufficient for a reasonable jury to conclude that Mr. Sands knew of at least the essential objective of the drug conspiracy, that he knowingly and voluntarily became part of it, and that his actions "facilitate[d] the endeavors of other alleged coconspirators or facilitate[d] the venture as a whole." Carnagie, 533 F.3d at 1238.

■ b. Mr. Sands contends that a variance occurred in this case between his indictment and the proof offered at trial. Specifically, he submits, the indictment charged a single conspiracy, but the government sought at trial to prove multiple conspiracies. Because of this, he argues, the district court was obliged to, but did not, provide the jury with a multiple conspiracy instruction that described explicitly the possibility of several conspiracies and instructed the jury that in order to convict Mr. Sands it had to find him guilty of a single, overarching conspiracy as alleged in the indictment. Although Mr. Sands failed to object to the jury conspiracy instructions at trial on this basis, and thus plain error review obtains, we find that his challenge would fail even under a more permissive standard of review.

Under our circuit's precedent, it has long been the case that "a failure to in-

struct the jury on uncharged multiple conspiracies is not reversible error as long as the jury instructions adequately conveyed that the government had the burden of proving beyond a reasonable doubt the single conspiracy as alleged." *United States v. Evans,* 970 F.2d 663, 674–75 (10th Cir.1992) (internal quotation marks and brackets omitted). Here, the jury instructions conveyed just that. They informed the jury that the government had the burden of proving beyond a reasonable doubt defendant's guilt; set out count 1 as alleged in the superseding indictment; explained that the defendant was on trial only for the acts alleged in the indictment; and defined the essential elements of a conspiracy. *See* Jury Inst. Nos. 5, 17, 23, 34. The instructions specifically added that "[m]ere similarity of conduct among various persons, and the fact that they may have associated with each other, and may have assembled together and discussed common aims and interests, does not necessarily establish proof of the existence of a conspiracy." Jury Inst. No. 23. Because the jury instructions adequately conveyed that the government had the burden of proving beyond a reasonable doubt the conspiracy alleged in the indictment, we find no colorable argument that the district court's refusal to grant a multiple conspiracy instruction was reversible error. *See Evans,* 970 F.2d at 675.

c. Mr. Sands asserts that the district court erred in submitting an "aiding and abetting" instruction to the jury on count 1. *See* Motion for Judgment of Acquittal or in the Alternative a New Trial, at 7; Jury Inst. No. 26. Again, Mr. Sands failed to object to the jury instructions at trial, but again we find that his claim fails even under a standard of review more generous than plain error. It is well settled that "a general jury verdict [is] valid so long as it [is] legally supportable on one of the submitted grounds—even though [there is] no assurance that a valid ground, rather than an invalid one, was actually the basis for the jury's action." *Griffin v. United States,* 502 U.S. 46, 49, 112 S.Ct. 466, 116 L.Ed.2d 371 (1991). Here, count 1 alleged two theories, conspiracy and aiding and abetting, and the jury was instructed on both. For reasons already detailed, the evidence was sufficient to convict Mr. Sands of the alleged conspiracy. As such, even if the aiding and abetting theory were invalid, a question on which we need not pass, the jury's verdict remains valid as a matter of law.

■ 4. Finally, we fail to find any colorable ground for the assertion that the district court abused its considerable discretion in sentencing Mr. Sands. *See Gall v. United States,* 552 U.S. 38, 128 S.Ct. 586, 597, 169 L.Ed.2d 445 (2007). In his *Anders* brief, counsel identifies two possible challenges to Mr. Sands's sentence—first, the district court improperly took into account relevant conduct that was never found by a jury or proven beyond a reasonable doubt; second, that the district court erred in refusing to grant defendant's request for a downward variance.

Mr. Sands's first challenge is squarely foreclosed by our precedent. "[W]e have routinely permitted a district court to enhance a defendant's sentence using uncharged conduct proven to the court by a preponderance of the evidence." *United States v. Rodriguez–Felix,* 450 F.3d 1117, 1131 (10th Cir.2006); *see also United States v. Brown,* 556 F.3d 1108, 1110–11 (10th Cir.2009). In particular, we have repeatedly recognized that a sentencing court acts within its power when it looks at relevant conduct to calculate a quantity of drugs. *See, e.g., Brown,* 556 F.3d at 1110–11. We thus find that no colorable basis exists on which to challenge the district court's consideration of relevant conduct.

Mr. Sands's second challenge likewise presents no meritorious claim. We review sentences for substantive and procedural reasonableness under a deferential standard of review. *United States v. Haley,* 529 F.3d 1308, 1311 (10th Cir.2008) (citing *Gall,* 552 U.S. 38, 128 S.Ct. at 597). We have repeatedly held that a "[s]entence imposed within the correctly calculated Guidelines range," such as the sentence imposed here, "may be presumed reasonable on appeal." *Id.* (citing *Gall,* 552 U.S. 38, 128 S.Ct. at 597; *Rita v. United States,* 551 U.S. 338, 127 S.Ct. 2456, 168 L.Ed.2d 203 (2007)). The defendant may rebut that presumption by showing that the 18 U.S.C. § 3553 factors justify a variance. *Id.* However, "given the district court's institutional advantage over our ability to determine whether the facts of an individual case justify a variance pursuant to § 3553(a) ..., we generally defer to its decision to grant, or not grant, a variance based upon its balancing of the § 3553(a) factors." *Id.* (citing *Gall,* 552 U.S. 38, 128 S.Ct. at 597–98). The district court abuses this discretion only "when it renders a judgment that is arbitrary, capricious, whimsical, or manifestly unreasonable." *Id.*

After reviewing the record in this case, we see nothing to suggest that Mr. Sands's sentence was either substantively or procedurally unreasonable. Mr. Sands's counsel made his case for a downward variance at the sentencing hearing, arguing among other things that a below-Guidelines sentence would provide a sufficient level of deterrence for his client. The district court rejected the variance request and imposed a sentence within the Guidelines range. In doing so, the court explicitly considered each of the 18 U.S.C. § 3553 factors, and explained in detail its basis for rejecting the defendant's downward variance arguments. In light of the fact that the sentence was within the Guidelines range and the court amply explained its reasons for imposing the sentence it selected, we see no colorable basis for the argument that the sentence was either procedurally or substantively unreasonable.

\*      \*      \*

Counsel's motion to withdraw is granted and this appeal is dismissed.