HARTZ, Circuit Judge,
concurring in part and dissenting in part, joined by O’BRIEN, Circuit Judge.
Given the framework that the opinions in this case adopt in addressing the issues, I agree with much of Judge Kelly’s opinion; but to the extent that Judge Gorsuch dissents, I find his arguments persuasive and join his opinion. I write separately, however, because of my discomfort with the framework, which requires consideration of multiple distinct causes of action arising out of a single seizure. I propose a simpler alternative. I also question our leaving issues of Constitutional law to the jury and propose bifurcated trials (under either the majority’s framework or my proposed alternative) to avoid this abrogation of judicial responsibility.
In my view the majority’s framework overcomplicates the analysis of Fourth Amendment unlawful-seizure claims and is likely to confuse juries, to the detriment of justice for both parties. Under the framework (what I will call the pigeonhole framework), at least as I understand it, to analyze a claim arising out of a seizure of a person, we must consider at least four distinct causes of action: (1) for an unlawful investigative detention, (2) for the use of excessive force in an investigative detention, (3) for an unlawful arrest, and (4) for the use of excessive force in an arrest. This framework requires making potentially difficult determinations that do not (or at least should not) have any practical consequences, risks double counting damages, and may undercompensate victims of unlawful seizures.
We would do better simply to recognize one cause of action (what I will call the unified cause of action): a claim for invasion of Fourth Amendment rights of the person. Disposing of the claim would require only one three-step process for all allegations arising out of seizures of the person. First, determine what information was acquired by the law-enforcement officers and when it was acquired. Second, determine what action by the officers (detention, handcuffing, etc.) was justified by their information. Third, assess damages for any action not justified by the information.
One advantage of recognizing a unified cause of action is that it can eliminate the need to make the often-unnecessary determination of the line between an investigative detention and an arrest. Under the pigeonhole framework it is always necessary to decide whether a seizure was an investigative detention or an arrest. This may be particularly important if the plaintiff questions an officer’s use of force. Say, the officer had reasonable suspicion but not probable cause and the force used exceeded that permitted for an investigative detention. Under the pigeonhole framework there are three possibilities: (1) If the seizure was an investigative detention, the victim has a claim for the use of excessive force in effecting an investigative detention. (2) If the seizure was an arrest and the force used was acceptable in effecting an arrest, then the victim has only a claim for unlawful arrest, and damages from the force used would be encompassed in the claim. (3) If the seizure was an arrest and the force used exceeded what would be acceptable in effecting an arrest, the victim has a claim for excessive force (and could collect damages under this claim for injuries arising from that *1134 quantum of force that exceeded what is acceptable for an arrest) plus a claim for unlawful arrest (and could collect damages for injuries arising from force used to the extent that the force would be acceptable in effecting an arrest).
Why go through all this? The victim is entitled to damages for all force used beyond what was proper for an investigative detention. Under the unified cause of action, it is necessary only to determine what that excessive force was and assess damages for it. In contrast, under the pigeonhole framework it is also necessary to determine whether there was an arrest and, if so, how much force would have been proper for a (totally hypothetical) lawful arrest. That additional effort accomplishes nothing. And dividing up the measurement of excessive force (between what would have been proper for a lawful arrest and what would have been excessive for such an arrest) creates an unnecessary risk of jury error, either in double counting or undercounting damages caused by the force.
This additional effort is not trivial. For one thing, it is not so easy to decide whether a seizure is an arrest or just an investigative detention. The Supreme Court has indicated that taking someone involuntarily to the station house should be considered an arrest, see Hayes v. Florida, 470 U.S. 811, 815-16, 105 S.Ct. 1643, 84 L.Ed.2d 705 (1985); but it has provided little if any guidance regarding the characterization of on-the-scene seizures. And lower-court decisions are not much more help: Ordinarily there is no need to determine the line between an investigative detention and an arrest; the typical case asks only whether officers who lacked probable cause had conducted an unlawful investigative detention by extending it too long or using excessive force.
To be sure, some of our cases, and some language in the majority opinion, suggest that when an investigative detention goes bad it becomes an arrest. See Maj. Op. at 1115 (“The use of firearms, handcuffs, and other forceful techniques generally exceed the scope of an investigative detention and enter the realm of an arrest.” (brackets and internal quotation marks omitted)); id. at 1130-31 (“‘[A]n unreasonable level of force transforms [an investigative] detention into an arrest requiring probable cause.’ ” (quoting United States v. Shareef, 100 F.3d 1491, 1507 (10th Cir.1996))). But it is not at all clear why this should be so. Why can’t an investigative detention that lasts too long or employs too much force simply be called an unlawful investigative detention? Indeed, if any excessive use of force converts an investigative detention into an arrest, then there could never be a claim for excessive force in effecting an investigative detention. (The claim would always become one for unlawful arrest or for excessive force in effecting an arrest.) And what about an investigative detention that lasts too long? Consider an officer’s detention of a vehicle for three hours to await a drug-detection dog. We might well say that the detention could not be justified by mere reasonable suspicion. But it strikes me as strange to say that when the timer hit, say, 50 minutes, the investigative detention became an arrest. It does less violence to the English language just to declare that the investigative detention became an unlawful investigative detention. (By the way, the Fourth Amendment speaks of “seizures,” not “arrests”; so there is no need to strain our terminology to fit Constitutional language.)
As I understand the law, we need only decide whether action would be justified by reasonable suspicion, by probable cause, or by neither, rather than precisely defining what an arrest is. Justice White’s plurality opinion in Florida v. Royer, 460 U.S. 491, 103 S.Ct. 1319, 75 L.Ed.2d 229 (1983) is suggestive. First, it said that *1135 “Terry [v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968)] and its progeny .:. created only limited exceptions to the general rule that seizures of the person require probable cause to arrest.” Royer, 460 U.S. at 499, 108 S.Ct. 1319. This language indicates to me that the dichotomy is between Terry stops and seizures requiring probable cause, rather than between Terry stops and arrests. Reinforcing this view is Justice White’s statement of the opinion’s holding: “We have concluded ... that at the time Royer produced the key to his suitcase, the detention to which he was then subjected was a more serious intrusion on his personal liberty than is allowable on mere suspicion of criminal activity.” Id. at 502, 103 S.Ct. 1319. In other words, the seizure was not within the confines of Terry, so probable cause was required. Although the opinion later notes that “[a]s a practical matter, Royer was under arrest,” id. at 503, 103 S.Ct. 1319, that does not appear to be a necessary condition of the holding.
My final concern with the pigeonhole framework is that it may lead to under-compensation of plaintiffs. By requiring claims to fit within a rigid framework, meritorious claims may be slighted. The injuries resulting from an unconstitutional seizure are not limited to those arising from detention in itself and from the use of force. There may also be dignitary insults, such as being publicly branded a criminal or by being exposed to public view in one’s underwear. Surely damages should be permitted for such injuries arising from an unlawful seizure. But the majority opinion’s unpersuasive effort to affirm an excessive-force claim for Mrs. Cortez makes me wonder whether another court would deprive her of dignitary damages because they did not fit in a previously recognized pigeonhole.
To repeat, the framework for deciding cases under a unified cause of action would require: first, fact-finding regarding what grounds the officers had for their action; next, a legal determination whether the officers had probable cause or reasonable suspicion and what acts by the officers were permissible; and finally, fact-finding regarding whether the officers exceeded the bounds of permissible conduct and, if so, the damages, compensatory and punitive, for which they are liable. One issue that arises under both the pigeonhole framework and this framework is what the procedure should be for the second step, the determination (from the historical facts) whether the officers had probable cause or reasonable suspicion. Because I believe that this determination is a duty of the court, even though the jury may have to resolve disputed questions of historical fact, I would suggest that the most sensible approach may be to bifurcate the trial between (1) an initial trial session after which the jury answers special interrogatories regarding what information was known to the officers and (2) a second session after which the jury decides what the officers did and the amount of damages, if any, to which the plaintiff is entitled. In the intermediate stage between the two trial sessions, the trial judge must decide, based on the findings of historical fact by the jury at the initial session, what alleged conduct would be unlawful — or, if a defendant claims qualified immunity, what alleged action would be clearly established as unlawful.
I recognize that our precedents hold that the issue of probable cause or reasonable suspicion is for the jury when the historical facts are disputed. See DeLoach v. Bevers, 922 F.2d 618, 623 (10th Cir.1990). But when the historical facts are undisputed, we should not leave to the jury to determine whether those facts establish probable cause or reasonable suspicion. See Bell v. Irwin, 321 F.3d 637, 641 (7th Cir.2003). And it strikes me as peculiar *1136 for us to defer to the jury’s resolution of probable cause when the historical facts are disputed while we do not defer to the trial judge in the same circumstances, see United States v. Dozal, 173 F.3d 787, 792 (10th Cir.1999) (“We review the legal issue of probable cause de novo.”). Our only deference to the trial judge is in the findings of historical fact, not the determination whether the found facts establish probable cause or reasonable suspicion. See id. Of course, the judge can instruct the jury on the meaning of probable cause or reasonable suspicion, but the judge cannot fully inform the jury of the body of law that informs our decisions on these matters. The only acceptable alternative I can see to a bifurcated trial is for the jury instructions to provide what amounts to a chart that tells what result (regarding the existence of probable cause or reasonable suspicion) the jury should reach if it finds particular facts. Perhaps that would be a workable approach when there are only one or two material disputed facts.
Turning to the case at hand, applying the unified framework would simplify the analysis a good deal. The historical facts are undisputed. With respect to Mr. Cortez, the first step would then be to determine whether the law was clearly established that the officers lacked probable cause to arrest him. If, as Judge Gorsuch reasons, the law was not clearly established, then Mr. Cortez’s detention, including the officers’ use of force against him, would not be grounds for liability of the individual officers. If, on the other hand, as Judge Kelly reasons, the officers clearly lacked probable cause, the next step would be to decide whether they had reasonable suspicion. The full court seems to agree that there was reasonable suspicion, so the issue becomes whether the law was clearly established that some of the officers’ actions against Mr. Cortez — ranging from the use of force to extending the detention beyond, say, 30 minutes — could not be justified by mere reasonable suspicion. (I note that the majority opinion appears to assume that the entire seizure of Mr. Cortez was unlawful because it was an arrest. But since the conclusion that it was an arrest is based, at least in part, on events that occurred after the initial seizure (such as the duration of the detention), perhaps damages did not begin to accrue immediately.) The jury could then assess damages for any such actions.
For Mrs. Cortez the officers clearly lacked even reasonable suspicion. Therefore, she would be entitled to damages for all that the officers did to her. There would be no need to decide whether the force was more than permitted for a lawful investigative detention or lawful arrest, nor would there be a need to apportion damages between two or more claims. All would be subsumed in one Fourth Amendment claim.
Perhaps this approach is what the panel opinion was moving toward. But rather than speaking of an excessive-force claim being subsumed in an unlawful-arrest claim, or some similar formulation, I think the matter is clarified by eliminating all subcategories and speaking only of a Fourth Amendment claim.